ORDER
 

 B. AVANT EDENFIELD, District Judge.
 

 Before the Court in this diversity case is the motion of the defendant City of Brunswick for a judgment notwithstanding verdict or alternatively for new trial. This case involves a traffic accident in which the plaintiff Mr. Banks suffered serious injuries which resulted in amputation of his leg. Damages were claimed by him for pain and suffering, lost income and medical expenses. Mrs. Banks claimed damages for loss of consortium. A trial of these issues
 
 *691
 
 was held at Brunswick, Georgia, September 2-5, 1980, with the jury returning a verdict of $140,000 for Mr. Banks and $5,000 for Mrs. Banks. The defendant contends here that these verdicts should be set aside on several grounds: (1) that the present facts do not permit application of the exception to general municipal sovereign immunity under Georgia law where the city has created or maintained a nuisance; (2) that the Court’s charge on comparative negligence erroneously burdened the defendant with the negligent acts of other parties; (3) that the Court improperly instructed the jury concerning the definition of “nuisance” and the standard of care applicable to the conduct of municipal officials; (4) that the jury was incorrectly instructed as to the division ■ of responsibilities between city officials and the State Department of Transportation (DOT); (5) that the Court failed to give certain additional charges to the jury, as properly requested by the defendant.
 

 All of these objections are considered carefully below. In light of this review, it is the determination of the Court that while the arguments raised by the defendant may note several troublesome problems in a very complex, if not confused, area of law they do not suggest any error which would require the relief here sought. Accordingly, defendant’s motion for JNOV or new trial will be denied.
 

 Background
 

 This action arises out of the collision on October 26, 1974, of a motorcycle driven by the plaintiff David Banks with an automobile operated by one LeRoy Armstrong at the intersection of U.S. 17 and the F. J. Torras Causeway approach at Brunswick, Glynn County, Georgia. Armstrong was making a left • turn toward the causeway when he collided with the plaintiff who was crossing the intersection proceeding north on U.S. 17. There was, however, no allegation of fault on the part of either motorist. Rather, plaintiff claimed that both he and Armstrong were lawfully following the traffic signal light. But, because the design of the signal failed to include a yellow light between the left turn arrow and the green light in plaintiff’s lane, the drivers were unwittingly directed to the point of impact.
 

 Plaintiff initially brought suit against the City of Brunswick, its city manager and commissioners, Glynn County, its county administrators and commissioners, and the Georgia Department of Transportation (DOT), which had assisted in the original placing of the signal system. By his Order of March 22, 1976, Judge Alaimo dismissed the DOT from the suit on grounds of sovereign immunity. Thereafter, Judge Lawrence dismissed all other defendants excepting only the County Administrator Baer in his individual capacity and the City of Brunswick, also on the grounds of sovereign immunity. At trial, this Court granted Mr. Baer’s motion for directed verdict upon concluding that no evidence had been presented to establish that he owed any duty of care with respect to the signal or that it was within his control. Thus, the only defendant remaining before the Court is the City of Brunswick.
 

 Arguments
 

 In the interests of clarity, the Court will consider defendant’s numerous arguments
 
 seriatim.
 

 1. Defendant states as general grounds for JNOV or new trial the alleged insufficiency of the evidence to permit a finding that the conduct complained of constituted a nuisance under Georgia law. Unless the traffic light in question is considered as a nuisance, municipal immunity would, of course, bar recovery.
 
 Town of Fort Oglethorpe v. Phillips,
 
 224 Ga. 834, 165 S.E.2d 141 (1968). Two factors are cited to distinguish the present case from
 
 Fort Oglethorpe.
 
 Defendant points out first that, unlike the traffic signal in that case, the present suit involves a light that functioned as intended. This difference is deemed critical in view of the principle that “an act which the law authorizes to be done may result in an actual nuisance only when there is error in the execution, specifications . . . or similarly where the act itself ... be
 
 *692
 
 comes a nuisance when conducted in an illegal manner to hurt and inconvenience or damage of another.. .. ”
 
 Mayor etc. of Savannah v. Palmerio,
 
 145 Ga.App. 429, 432, 243 S.E.2d 680 (1978),
 
 rev’d,
 
 242 Ga. 419, 249 S.E.2d 224 (1978). Second, defendant points out that the traffic light in
 
 Fort Oglethorpe
 
 was being operated in an illegal manner. It clearly was not functioning as contemplated by any manual on traffic control devises. In the present case, the light was within the specifications applicable at the time of original installation and not flatly outlawed by any specifications in effect at the time of the accident in question.
 

 The Court does not dispute that defendant has pointed out two apparent differences between
 
 Fort Oglethorpe
 
 and the present case. However, upon examination of the case law which has developed since
 
 Fort Oglethorpe,
 
 it is apparent that these differences have not been viewed as sufficient to avoid the nuisance exception to municipal immunity. Considering defendant’s first distinction, it is simply not essential that the instrumentality complained be malfunctioning. In
 
 Porter v. City of Gainesville,
 
 147 Ga.App. 274, 248 S.E.2d 501 (1978), the court found a cause of action stated under
 
 Fort Oglethorpe
 
 with respect to a playground swing. There the plaintiff alleged merely that injury resulted from a devise which was an “inherently dangerous instrumentality,” and an “attractive nuisance.” No suggestion whatever was made that the swing was functioning in any uncontemplated fashion or otherwise in disrepair. Quite the opposite, the Court found that the municipality’s evidence of proper repair and maintenance did not “negate plaintiff’s assertion that the devise was inherently unsafe.”
 
 Porter,
 
 at 276, 248 S.E.2d 501.
 

 It is clear then that Georgia law does not require that an instrumentality be functioning improperly before it may be regarded as a nuisance. It is only necessary that it “hurt and inconvenience.” This alone can make it a nuisance, which is illegal, of course. Thus, the quotation relied upon by the defendant says much less than might first appear. In fact, it merely states that what a municipality does is legal unless it is illegal, i.e., a nuisance, since under Georgia law “the fact that the act done may otherwise be lawful shall not keep it from being a nuisance.” Ga.Code Ann. § 72-101.
 

 This analysis also effectively disposes of defendant’s second point. Plainly, the notion of “illegality” in Georgia involves much more than failure to comply with some particular directives which may or may not apply to an instrumentality at a given time. A condition may be illegal when it is objectionable only on grounds of causing “hurt or inconvenience,” i.e., when it is a nuisance. This conclusion is directly authorized by the statutory definition of nuisance quoted above. Moreover, any doubt as to the applicability of this code section to cases under
 
 Fort Oglethorpe
 
 is removed by explicit reliance on it in the Supreme Court of Georgia’s most complete exposition of the nuisance exception to date. See
 
 Palmerio,
 
 242 Ga., at 425, 249 S.E.2d 224.
 

 Furthermore, case law does not support defendant’s alternative characterization of the failure of the city to install an amber signal light as discretionary nonfeasance. Of course, the distinction between malfeasance, which is actionable, and mere nonfeasance, which is not, is always somewhat arbitrary. Every act of negligence can be said to involve some “nonfeasance,” i.e., the inaction of not correcting negligent conduct. But, it is clear that Georgia law does not permit a municipality to characterize construction of inadequate signals as a discretionary function:
 

 [Tjhere is no duty (on the city) to regulate traffic by posting signs or otherwise . . . (however) once the city undertakes to control traffic with signs or warning devises, it cannot create a dangerous condition in doing so . . . and must properly maintain the signs.
 

 Bowen v. Little,
 
 139 Ga.App. 176, 228 S.E.2d 159 (1976),
 
 quoting Slavin
 
 v.
 
 City of Tucson,
 
 17 Ariz.App. 16, 495 P.2d 141. Nor has this principle been limited to traffic signals:
 

 
 *693
 
 It has never been presumed that the law intended that the right to construct and maintain a system of drainage carries with it the right to construct or maintain it in such a way as to endanger the health or life of another.
 

 City of Atlanta v. Leake,
 
 243 Ga. 20, 252 S.E.2d 450 (1979),
 
 quoting Lawrence v. City of LaGrange,
 
 63 Ga.App. 587, 589,11 S.E.2d 696 (1940).
 

 In sum, the Court finds that plaintiff’s allegations are sufficient to state a cause of action in nuisance. Plaintiff claimed the existence of a recurring condition causing hurt, inconvenience or damage, maintained by the defendant and known to it. Plaintiff further alleged personal injury proximately cause by this condition. Evidence at trial indicated that the intersection in question was extremely heavily travelled. Testimony further indicated that it was considered hazardous particularly because of the lack of an amber signal. Evidence was also presented to show that the city had knowledge of the condition and control over it. This evidence clearly provided basis under which a jury might conclude that the defendant had maintained a nuisance. Furthermore, there was basis for the jury’s conclusion that this nuisance had some causal connection to plaintiff’s injury. The Court therefore finds no merit in defendant’s general grounds for the present motion.
 

 2. The Court charged the jury on the comparative fault of the parties as follows:
 

 I charge you that the Georgia law of comparative negligence or fault is applicable to this case. That rule of law is as follows: One, if you find that the fault, if any, of the defendant and other parties was less than the negligence of the plaintiff, if any, then in that event, the plaintiff could not recover. Two, if you find that the fault, if any, of the defendant and any other parties was equal to the negligence of the plaintiff, if any, then in that event, the plaintiff cannot recover. Three, if you find that the fault, if any, of the defendant and other parties was greater than the negligence of the plaintiff, if any, then in that event, the plaintiff would recover but the amount of the recovery would be reduced by the degree of negligence chargeable to the plaintiff. Where the plaintiff’s injury or damages, if any, is the sole proximate result of his own erroneous judgment or due solely to his own negligence, the doctrine of comparative negligence is not applicable and the plaintiff is not entitled to recover. Tr., v. Y, p. 59.
 

 The defendant argues that this charge is erroneous in that it improperly burdens it with possible unrelated negligent acts by other parties, notably Mr. Armstrong, Glynn County, and the DOT. Defendant rests his objection on three Georgia opinions. See
 
 Mishoe v. David,
 
 64 Ga.App. 700, 708, 14 S.E.2d 187 (1941);
 
 Smith v. American Oil Co.,
 
 77 Ga.App. 463, 501, 49 S.E.2d 90 (1948);
 
 Wilson v. Harrell,
 
 87 Ga.App. 793, 799, 75 S.E.2d 436 (1953). These eases are cited for two related propositions.
 
 Mishoe
 
 holds that, when a plaintiff sues joint tortfeasors, he may recover against only those whose negligence was greater than his own.
 
 Wilson
 
 quotes this holding, citing also
 
 Smith.
 
 The holding of the court in this case is closest to the present problem. The
 
 Smith
 
 court ruled as follows:
 

 [Wjhere the acts of negligence of two or more tortfeasors concur as the proximate cause of an injury, the party aggrieved may sue either one or all of the joint tortfeasors. Where recovery is sought against only one of them, the law seems to be that the plaintiff is entitled to recover unless the negligence of the plaintiff equals to or exceeds that of the tortfeasor against whom the action is instituted.
 

 77 Ga.App., at 501, 49 S.E.2d 90.
 

 Thus, it appears that
 
 Smith
 
 directly supports plaintiff’s position. However, this support is, upon examination, of most uncertain force.
 
 Mishoe,
 
 which is the basis for the holding cites no authority for its conclusion, and in no way discusses the logical basis for it. Similarly,
 
 Wilson
 
 cites no authority except
 
 Smith
 
 and
 
 Smith
 
 none
 
 *694
 
 save
 
 Mishoe.
 
 These cases are also completely devoid of discussion as to the basis for the rule. Moreover, none of these cases has been cited subsequently for the proposition here advanced. In fact, they have only very rarely been cited for any proposition at all.
 

 Thus, the defendant advances only these three opinions, all well over two decades old, none from the highest state court, and none relied upon in any subsequent reported opinion. Obviously, these facts create considerable doubt as to the continuing validity of the proposition here advanced. This doubt is in no way reduced by deeper examination. Considering first the broader proposition announced in
 
 Mishoe
 
 that relative fault must be considered with respect to each tortfeasor individually and the plaintiff, the case of
 
 Jordan v. Ellis,
 
 148 Ga.App. 286, 250 S.E.2d 859 (1978) is particularly instructive. In
 
 Jordan,
 
 the plaintiff appealed award for the wrongful death of her son, who was killed in a collision between his vehicle and those driven by two defendants.
 
 [1]
 
 Plaintiff claimed
 
 inter alia
 
 that the jury’s verdict was inadequate. In denying the appeal, the Georgia court held as follows:
 

 Where the evidence authorizes the jury to find that [all] parties are at fault, but the defendants] slightly more so, so as to give the plaintiff a cause of action, a verdict for a small amount of damages is proper and should not be disturbed. [Cits.]
 
 Strickland v. English,
 
 115 Ga.App. 384 (4) (154 SE2d 710);
 
 Waggoner v. Bevich,
 
 127 Ga.App. 877, 880 (195 SE2d 246). Under the comparative negligence rule, the jury may apportion damages as it determines within its discretion to be proper when the evidence shows all parties’ negligence contributed to the injuries, the plaintiff’s to a lesser degree than the defendants’.
 
 Fargason v. Pervis,
 
 138 Ga.App. 686, 687 (227 SE2d 464).
 

 148 Ga.App., at 290, 250 S.E.2d 859.
 

 It seems clear then that present Georgia law does not require any individual comparison of plaintiff to defendant for recovery in tort. This conclusion is, if anything, reinforced by the fact that the cases cited in this quotation,
 
 Strickland, Waggoner
 
 and
 
 Fargason,
 
 do not involve multiple defendants. Thus, the Georgia court in making its ruling explicitly expanded the general comparative negligence rule to include the fact situation and the charge used in the case now before this Court. Obviously, this determination overrules
 
 Mishoe sub solentio.
 

 Mishoe
 
 was, of course, the only authority for the holding quoted in
 
 Smith
 
 above concerning defendant and nondefendant jointtortfeasors. With it effectively eliminated, there seems no reason to find
 
 Smith
 
 not also impugned. Developments in Georgia law with respect to contribution support this view. When
 
 Smith
 
 was decided, Georgia did not permit contribution between defendant and non-defendant tortfeasors. Thus, there might have been some basis for requiring comparison of only the actual parties to the litigation since only a name defendant could be expected to pay any verdict returned for the plaintiff. In 1966, Georgia adopted a statute which generally permits contribution in this situation. Ga. Code Ann. § 105-2012(1) (Acts 1966, p. 433). Thus, a defendant need no longer be prejudiced by the absence of a joint-tortfeasor. In fact, in the present action, plaintiff has already acknowledged that recovery is properly reduced by that previously obtained against the driver who struck the plaintiff. Moreover, the possibility of concurrent negligence by other parties being charged to the plaintiff seems largely fanciful. The Court specifically instructed that there could be no recovery unless the light was found within city, not DOT control, no claim against the county was before the jury, and no substantial evidence against the county Administrator was presented.
 

 
 *695
 
 In sum, the Court concludes that present Georgia law does not recognize the principles announced in
 
 Mishoe
 
 and applied in
 
 Wilson
 
 and
 
 Smith.
 
 The Court’s charge is therefore a proper reflection of how a Georgia court would currently resolve the fact situation here at issue. Defendant’s enumeration of error is therefore without merit.
 
 [2]
 

 3. During their deliberation the jury sent the Court the following question:
 

 We’re having trouble with the specific definition of a nuisance. The problem centers on ‘the ordinary, reasonable man’ and whether to determine that something constitutes a nuisance requires that we have evidence of more than one incident, a single incident, or whether the nuisance may be deemed by iis to exist just on the basis of general judgment?
 

 Tr., v. V, p. 82. The Court responded: The plaintiff or plaintiffs have the burden to prove their claims by a preponderance of the evidence, that is, the greater weight of evidence as defined for you in my charge this morning. Now, it is for you to make the determination whether the evidence is sufficient to convince you of the existence of a nuisance. How much evidence, and the nature of the evidence is exclusively within your province as the judge of the facts. Of course, if the evidence should fail to convince you that a nuisance existed you would not be authorized to return a verdict for the plaintiffs. In other words, it is for you to decide whether one incident, or the general knowledge or judgment is sufficient to convince you or not. The Court cannot tell you the nature or type of evidence that should guide your judgment in greater detail than previously given to you.
 

 Tr., v. V, p. 82-83.
 

 Defendant, now as at trial, contends that, by reference to “the ordinary, reasonable man,” the jury “obviously” indicated confusion as to whether usual negligence principles could be applied in determining the city’s liability. Defendant points out that a city cannot be liable for negligence in the operation and maintenance of the traffic signal.
 
 City of Rome v. Potts,
 
 45 Ga.App. 406, 410, 165 S.E. 131 (1932). Thus, it is argued that the jury was not properly informed that mere negligence was insufficient to support recovery. Hence, they proceeded to consider the evidence under an erroneous view of the law.
 

 Upon examination of the Court’s charge with respect to nuisance and the facts of this case, it is apparent that no error is to be found. Rather than reflecting confusion as to the question of negligence, the jury clearly referred to the Court’s charge that “the condition complained of must be something that would affect the ordinary, reasonable man not merely someone with unusual tastes or preferences.” Tr. v. V, p. 57. The Court simply did not discuss negligence with respect to the “reasonable man.” Thus, there is no basis whatever for concluding that the jury was referring to negligence in their question, especially since the
 
 *696
 
 question specifically mentions “nuisance” no less than three times.
 

 Furthermore, the Court would doubt that there could be any meaningful distinction between negligence and nuisance in the present case. Of course, the distinction is seldom clear. Thus, in
 
 Fort Oglethorpe,
 
 the Court holds that “[a]n action may be brought against a municipality for the creation or maintenance of a nuisance where the municipality is negligent in carrying out a lawful act which was authorized to do.” 224 Ga., at 838, 165 S.E.2d 141. The only real distinction between negligence and nuisance would seem to be that the latter involves a continued or repeating condition. One may, of course, dispute whether any negligence was involved in the design and maintenance of the traffic signal. But, there would appear to be no room at all to doubt that the light was a repeating instrumentality. Thus, if there were negligence in design or maintenance, that negligence would of necessity give rise to a nuisance. Certainly the jury was authorized to so find, particularly in light of the police officers’ testimony that the light was a known hazard.
 

 4. Defendant also takes exception to the Court’s charges with respect to the responsibilities of the DOT concerning the traffic light. The Court charged as follows:
 

 Plaintiff alleges that the collision which caused their injuries is the fault of defendant City of Brunswick. I charge you that under Georgia law while permission from the DOT is needed to erect devices stopping traffic on a state highway, municipalities do have general power to regulate traffic by means of police officers, or official traffic control devices on streets and highways within their jurisdiction. I further charge you that the State Department of Transportation has the general responsibility to design, manage and improve the State highway system. But, where State highways are within City limits the DOT, that is, the Department of Transportation is required to provide only substantial maintenance and operation. These include things such as reconstruction and resurfacing, reconstruction of bridges, erection and maintenance of official department signs, painting of striping and pavement delineators and other major maintenance activities. Therefore, you, the jury must first determine whether operation and maintenance of the signal light in question fell within those less than major activities which were the responsibility of the City of Brunswick. If you determine that this light was within the proper sphere of the defendant’s authority.. . .
 

 Tr., v. V, p. 56.
 

 Defendant claims that the Court should properly have charged two specific code sections, Section 95A-901(b) and Section 95A-902(a). These sections provide in part as follows:
 

 (1) In conformity with its uniform regulations, the department shall place and maintain or cause to be placed and maintained, such traffic-control devises upon the public roads of the State Highway System as it shall deem necessary to regulate, warn, or guide traffic. . . . Ga. Code Ann. § 95A-901(b).
 

 (2) It shall be unlawful for any person to erect, place, or maintain within the right-of-way of any public road any sign, signal, or other devise except as required or authorized by the provisions of Section 95A — 901 or of other law. Ga.Code Ann. § 95A — 902(a).
 

 Defendant argues that these statutes make the traffic signal the exclusive responsibility of the DOT.
 
 Palmerio, supra.
 

 The Court points out that the charge in question does in fact state that the DOT has “general responsibility to design, manage and improve the State highway system.” This statement would seem to capture the essence of the sections the defendant relies upon, which are in fact very broad, general descriptions of the duties of the DOT. The additional material used by the Court is drawn from the more specific statutory description of the respective duties of the DOT and municipalities. Thus, Section 95A-302(a) does indeed mention the general duty of the DOT to “desig
 
 *697
 
 nate, improve, manage, control, construct, and maintain.” However, it then goes on as follows:
 

 Provided, that on those portions of the State Highway System lying within the corporate limits of any municipality the department shall be required to provide only substantial maintenance activities and operations including but not limited to reconstruction and major resurfacing, reconstruction of bridges, erection and maintenance of official department signs. . . .
 

 Ga.Code Ann. § 95A-302(a).
 

 The additional portion of the charge objected to here similarly drew from specific applicable statutory language. Again, the Court properly noted the general regulatory power of the DOT to approve the erection of traffic signals. The Court then charged on the corresponding municipal power. Ga. Code Ann. § 68A-1502. Part (b) of 68A— 1502 provides as follows:
 

 No local authority shall erect or maintain any official traffic-control devise at any location so as to require the traffic on any State highway to stop before entering or crossing any intersecting highway unless approval in writing has first been obtained from the DOT....
 

 However, § 68A-1502(a) begins by stating that
 

 “[t]he provisions of this Title shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from ... (2) Regulating traffic by means of police officers or official traffic-control devices.”
 

 Ga.Code Ann. § 68A-1502(a).
 

 When the very broad statutory language relied upon by defendant and in fact covered by the Court is read in the context of these specific sections, it appears that defendant’s real objection is not to the Court’s charge but to the law. Defendant has in no way suggested that these specific sections are inapplicable. Moreover, defendant’s argument would have the Court simply ignore evidence from Mr. William Greenway of the DOT. Mr. Greenway indicated by deposition that no permit was needed or requested by the city before changing the light in question. Tr., v. II, p. 113. It is apparent then that both the law and the evidence permitted a finding that the city had control of the light, if, indeed, there can be any real doubt that altering the signal is not a “major maintenance activity” like bridge construction. It is simply incompatible with the law and the facts to argue that DOT control was exclusive. In this regard, defendant’s reliance on
 
 Palmerio
 
 is obviously unsound.
 
 Palmerio
 
 does indeed refer to exclusive state control of roads but only under
 
 former
 
 code sections. 242 Ga., at 422 N. 2, 249 S.E.2d 224. The sections charged by this Court replaced this old law well before trial and before the accident in question. Defendant’s enumeration of error is therefore without merit.
 

 5. Defendant’s final enumerations of error deal with certain other charges which were requested but not given.
 

 (a) Defendant’s request: “Where municipal corporations are not required by statute to perform an act, they may not be held liable for exercising discretion in failing to perform the same.” Ga.Code Ann. § 69-302.
 

 As was indicated above, the action complained of is not mere nonfeasance. Once it decided to place a signal at all, the defendant was obligated to act so as not to create a nuisance.
 
 Bowen v. Little,
 
 139 Ga.App. 176, 228 S.E.2d 159 (1976). Therefore, the requested charge was inapplicable to the present case. Defendant’s third requested charge is similarly inapplicable.
 

 (b) Defendant’s request: “I charge you that where the law authorizes an act to be done, it cannot be a nuisance if done as the law authorizes. Thus, where an act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience or damage of another. A municipality is immune from suit for acts it performs which are authorized by law and executed in accordance with the judgment or conclusion reached by municipal
 
 *698
 
 authority in the exercise of a governmental function. A municipality is not liable to private individuals for any error in performing legislative or judicial powers.”
 

 This charge is misleading in that it fails to include provision for the nuisance exception which is clearly available under
 
 Fort Oglethorpe.
 
 As was pointed out above, a nuisance is itself illegal. Therefore, conformity to general law is no defense to a nuisance action. Ga.Code Ann. § 72-101.
 
 Porter v. City of Gainesville,
 
 147 Ga.App. 274, 248 S.E.2d 501 (1978). Under
 
 Fort Oglethorpe,
 
 a municipality
 
 is
 
 liable to private individuals where
 
 any
 
 act carried out by it creates or maintains a nuisance.
 

 (c) Defendant’s request:
 

 I charge you that you would not be authorized to find the City of Brunswick liable in this case unless you find that the city violated an
 
 absolute duty
 
 to refrain from participating acts, not merely the relative duty of exercising reasonable care, foresight, and prudence in their performance. That is, the City would not be liable unless it was under an absolute legal duty to refrain from maintaining the traffic light in its existing condition or an absolute legal duty to provide an amber clearance interval following the green arrow.
 

 This charge is derived from
 
 Stanley v. City of Macon,
 
 95 Ga.App. 108, 111, 97 S.E.2d 330 (1957). It is, of course, an attempt to define the difference between nuisance and negligence. The Court covered this question in an appropriate charge derived from statutory language and recent case law under
 
 Fort Oglethorpe.
 
 The requested charge adds nothing to these authorities. It does promote substantial confusion by reference to “absolute duty.” Clearly a city is under a legal duty to create no nuisances. Insofar as the language requested reflects this, it is redundant. Insofar as it states otherwise, it is simply wrong. Therefore, there was no error in refusing the charge defendant requested.
 

 Conclusion
 

 As the Court first noted at trial, there are many cases and parts of cases which appear to support the positions argued here and previously by the defendant. However, upon detailed consideration of these points, I conclude that the plaintiffs have stated a proper cause of action and that the evidence adequately supports the jury’s determination. I further conclude that the Court’s charge provided a proper basis for the jury’s deliberations. Defendant’s motion for JNOV or new trial is therefore denied.
 

 [1]
 

 . There are other parallels between
 
 Jordan
 
 and the present case. In
 
 Jordan,
 
 the plaintiff was awarded a small recovery based on concurrent fault. Here the plaintiffs recovery may also be considered small in view of the very serious injuries he suffered. Also, the accident occurred in Glynn County, and involved two attorneys who participated in the present action. Perhaps these facts will recall the case to plaintiffs counsel, who also represented the plaintiff in
 
 Jordan,
 
 yet neglected to cite this authority to the Court.
 

 [2]
 

 . Defendant has also cited to the Court by supplemental brief, the case of
 
 Gazaway v. Nicholson,
 
 190 Ga. 345, 9 S.E.2d 154 (1940).
 
 Gazaway
 
 holds as follows:
 

 The rule that where several defendants are shown to be liable as tort-feasors the jury shall assess damages against all of them jointly in one amount is of common-law origin, and remains in force where it has not been changed by statute ... It may be true that in such case the rule as to comparative negligence can not in every instance be applied in favor of each separate defendant to the same extent as if one party only had been sued, the argument here being that in the former case the plaintiffs negligence must be compared with the combined negligence of all the defendants considered as a unit, whereas in the latter case only the negligence of the one and sole defendant can be treated as the unit of comparison. However that may be, the mere fact that the same formula might produce results which vary to some extent as to the individual defendants in the two cases would not within itself authorize the conclusion that enactment of the comparative-negligence rule operated to change the common law rule as to joint verdicts.
 

 190 Ga., at 348, 9 S.E.2d 154 (citation omitted). Obviously, this case at best only mentions the position plaintiff argues here, stating that it “may be true.” The Georgia court plainly does not so hold. Thus, no support for defendant is to be found.